May it please the court. I'm Andrew Desimone and I represent Mr. Arthur. I've reserved five minutes for rebuttal. To my knowledge, this is the first ever prosecution under Section 842 P2B in its 25-year existence and the first chance for any court to rule on its constitutionality. To set the stage for us, it is uncontested that Section 842 P2B is a content-based restriction on speech and therefore it presumptively violates the First Amendment. And it is uncontested that the government bears the burden to show that the speech punished by the law falls into a recognized traditional category of unprotected speech. That's all from the United States versus Stevens and Alvarez and that's our starting point. The only contested issue is whether the prohibited speech falls into the government's chosen category of unprotected speech, speech integral to criminal conduct. But it does not because the law punishes vast swaths of valuable protected speech without demanding that the speaker have criminal intent. This court should strike down that law. Just two years ago in Hanson... This is a facial challenge. You're not challenging the statute as it would apply to this defendant. Correct. This is a First Amendment overbreath facial challenge. Just two years ago in Hanson, the Supreme Court told us what speech integral to criminal conduct is and why it's unprotected. The court held quote, speech intended to bring about a particular unlawful act has no social value, therefore it is unprotected. And an intent requirement makes sense because this category deals with the criminalization of otherwise protected speech, not inherently harmful speech as an obscenity or true threats. For example, someone aiding and abetting a robbery or engaged in a drug conspiracy might tell other participants go here, do this, get this stuff. That speech is otherwise protected. It only becomes aiding and abetting or conspiracy and therefore unprotected by the First Amendment if the speaker says those things with a shared intent to commit the crime. And all of the examples of this category are the same. Whether it be conspiracy, solicitation, perjury, extortion, attempt, aiding and abetting, they all require the speaker to have the specific intent to commit a crime. This court's decision in Rice versus Paladin Enterprises further supports our argument. This court held that an intent requirement is necessary to constitutionally prescribe speech integral to criminal conduct and this said why, quote, an intent requirement would meet the legitimate, if not compelling, concern of those who publish, broadcast, or distribute to large undifferentiated audiences that the exposure to suit under lesser standards would be intolerable. And Rice was a civil case, mind you. Okay, and this court has recognized that the intent requirement for civil aiding and abetting is usually more relaxed than in criminal cases, requiring only that, quote, the criminal conduct be the natural consequence of one's original act, whereas criminal intent to aid and abet requires that the defendant have a purposive attitude toward the commission of the offense, end quote. And yet this court required the heightened criminal standard in the civil cases to prevent the chilling of speech. It would not make sense now for this court to hold that a lesser standard. What speech does this statute chill? So, first, let me apologize to the court that I did not do a good job with the hypotheticals in the briefing, but if you'll bear with me, I have a few examples from the world of industry, government, journalism, social media, which demonstrate an answer to your question. So first, government and industry. The government's own report on the law discusses text intended for military training, agricultural, engineering use in print and online, like, quote, explosive in road works, and, quote, explosives and blasting procedural manual, end quote, from the US Bureau of Mines. Imagine those entities get an anonymous tip or a letter from someone who says, thank you, they are using the text to make their next bombs for their next crimes. If the entities don't stop publishing or they don't pull the material off the internet, they're committing this crime. If they stop, the law is chilling. Well, that's not what happened in this case. I mean, Mr. Arthur knew when he was interacting with Buckshot that Buckshot intended to kill ATF agents, and he gave him the means to do that. Here's an incandescent bulb. This is how you use it as a detonator. This is how you rig your shotgun so you can shoot grenades at them when they come into your yard. This is how you do an IED. That's not the same thing. Correct, Your Honor, but back to your first question, this is a facial challenge, and I'm not here to defend Mr. Arthur's conduct. I don't claim it has any social value, but that's not the test. Overbreadth exists. If you're using those as comparators, there's got to be some connection there, and the fact that there may be some internet comment that I'm using what you're teaching about how to do coal mine explosives for something else, I don't see how that violates the statute. I'm using the hypotheticals to demonstrate the breadth of the law, because as Stephen says, we first have to figure out what can the law apply to, right, before we can kind of the inappropriate uses of the law. Perhaps the only constitutional zone of operation of this law is Mr. Arthur's conduct. When someone teaches a single person or a small group, and they know that that single person or every member of the small group intends to use it for a crime, but even that spike speech might have some social value in some circumstances, say if the person doesn't intend the crime, but they're only teaching the people to try to harm that they intend to cause. But set that aside, any small zone of constitutional application of this law is just dwarfed by the unconstitutional applications of the law as demonstrated by the hypotheticals. And so another one, academia. Imagine the publisher of a physics textbook in print and online gets the same tip or letter. If the publisher continues to publish new editions, or they don't remove it from the internet, they've committed this crime. If the publisher stops or removes the information, the law is chilling highly beneficial and educational speech to another large audience. Right, but in that example, the physics book publisher knows there's this particular individual who already has the book, but he doesn't know about anybody else. Well, they know they might be accessing the internet, so if they don't pull it off the internet, then they're committing this crime. You know, the government, before I get to the rest of the hypotheticals, I think if you look in the government's own report, they severely underestimate the breadth of this law. So on pages 48 to 49, the DOJ says, quote, a facilitation prohibition tailored to particular recipients, right, who are likely to make criminal use of the information would not have such a broad chilling effect on such speech. The person conveying the information would be required only to withhold its distribution to particular persons who pose an apparent risk, and otherwise would be able to continue general publication, distribution, or sales. But that's just not true based on the hypotheticals, right. There's no way to withhold the information only from particular people when you distribute it to large undifferentiated audiences. So is it your contention that the entire law is overbroad, or there are portions of the law that's overbroad? The entire subsection B is is unconstitutional because of the hypotheticals demonstrate that it's just got a vast application to protected speech. So journalism. A newspaper is running a series about home bomb makers, a specific bomb making or specific bombings in print and online. If someone writes in saying the information will be very helpful in making their next bombs for their next crime, does the newspaper have to stop the series? So the report, the government's own report on this law, talked about a Reader's Digest article detailing law enforcement's efforts to try to track down the killer of a judge and an attorney. And the article contained, quote, a detailed description of the explosive devices used, including how the bombs were constructed and what type of smokeless powder was used in their construction, end quote. And the talked about the fact that someone actually took that information and made a bomb for yet another crime. That brings me to yet another hypo hypo from the world of social media. A former military member is really concerned about the safety of people being tear gassed while peacefully protesting. So we post information on Twitter about the use of tear gas and how to keep yourself safe. Meanwhile, a group of bad actors seizes on that information to help plan violence against federal officers. If someone complains to the head of safety at Twitter, um, that they know a group is using this information to commit violence against officers and Twitter doesn't remove it, they've committed this crime. But if they've removed it, they are chilling beneficial speech. And remember, you know, back to the first hypothetical, this stuff is valuable not just to increase the efficiency and effectiveness of the use of explosives in all these fields, but to keep people who work with this stuff safe, right? This is used in a number of things. Road, roadway, clearing, mining, fireworks, construction or manufacture, bomb squads, SWAT teams, police departments. The list goes on and on. On in academia, this would apply to an academy. If you think there's no identified person that's going to use this information that the statute still applies to them. Sorry, I'm not understanding. The statute says it's unlawful for any person to teach use of an explosive knowing that such person intends to use the teaching for a federal crime of violence. So the statute covers the mileage by the teacher that there's someone out here who's going to use that and they know what they're using it for. How does that fit any of your hypotheticals? Because in each one of my hypotheticals, the entity publishing the material was on notice that someone intends to use the materials to commit a crime of violence. They've been... That's sort of a given in each one of the hypotheticals. They were put on notice by an anonymous tip or a letter or some sort of communication to put them on notice that that is what's happening. And if they don't take down the material... And you think that fits the knowing that such person intends to use language? Yes, absolutely. Just the possibility that this information could fall into the wrong hands might chill publication of this speech. So if this court were to uphold this law, general counsel for any of these entities may very prudently counsel their clients not to publish any of this information just in case a bad actor gets a hold of it, which could cause all sorts of problems if the entities otherwise have some sort of duty in the law to publish this information. Is the counsel chilling the speech? Chilling, that's what we're looking at. Right. Finally, the law is nowhere near narrowly tailored. The law has no exception for speech having serious scientific or other value. There's no provision as in some statutes requiring the speech... Why doesn't the knowledge element of the statute narrowly tailor it? So there's a knowledge element here, right? Knowing that the instruction is going to lead to someone committing like a federal offense, right? May, yeah. Right. So why doesn't that narrowly tailor? Because again, if we just go back to the fundamentals, it's got to fit into a traditional recognized category of unprotected speech. The one the government has chosen is speech integral to criminal conduct that requires intent on behalf of the speaker. So anything less than that doesn't get you there. It's not narrowly tailored enough. But also, this can be information that's far removed from a federal crime of violence in answer to your question, because it can be partial information about explosives, including basic math. And provision of the information only has to make the crime likelier. I would like to touch on just briefly, the government has the burden here to show that this constitutional error was harmless beyond a reasonable doubt as to the remaining counts. They don't even make that argument, let alone meet their burden. This would have been a fundamentally different trial if the government had not prosecuted Mr. Arthur for this unconstitutional crime. He probably would not have testified if only the gun counts were at issue. Prosecution on count one begged questions like, do you wanna overthrow the government? Do you intend to kill officers? Did you know somebody? So he had to answer those questions for the jury. But if those had not been at issue, he likely would not have testified and would not have incriminated himself on the gun counts. But again, he never incriminated himself as to the mens rea. And if you think about it, evidence that he knew the CI wanted to kill federal officers just does not have any bearing on whether he knew the firearms he possessed had the particular characteristics that made their unregistered possession unlawful, which was the mens rea for the gun counts. So I will sit down now, if you don't have any further questions, but we will ask that you reverse. Thank you. Thank you. Mr. Menta. May it please the court. Joseph Binta on behalf of the United States. Christopher Arthur taught Buckshot how to kill federal agents, and he did that believing that Buckshot intended to do so. The First Amendment does not immunize this conduct, which lies at the heart of what the statute legitimately prohibits. Is that normally left for aiding and abetting type criminal charges? So aiding and abetting would require that the crime be intended to be committed. And since this was an undercover operation, I don't think aiding and abetting would have fit here. So yes, many of these similar facts or circumstances do arise in aiding and abetting context. But what happened here was a violation of 842 P2B. Now, I wanna begin with... Again, we're not talking about it as applied to him. We're talking about the statute being over brought. Yes, Your Honor. And I wanna start with the hypotheticals that he raised for the first time here at Oral Argument, because they all have two common themes that I think are important to discuss. First, all of his hypotheticals create this idea of distribution to a broad audience. As we explained in our brief, distribution to a broad audience is not dealt with under 842 P2B, it's dealt with under 842 P2A. And that does require intent, and that's why... Wait a minute, you mean B doesn't apply if it's a broad audience? Where's the limitation there? It's exactly the language that Judge Agee pointed to, that it says it requires such person. It's when you're dealing with instructing... But wait a minute, wait a minute. The audience is more than just one person. The audience is everybody in the room. Now, the person impacted may be the person, but speech, that's what makes speech so beautiful in the First Amendment. It's everybody that assembles. So you're applying this to... He or she is making their speech to everybody. Good, decent citizens who wanna be informed about something. So you're saying it's not cabin to that? That's the whole point of chilling. That is, because one person might be there, that I have no intent for them to do anything, I can't speak to all of the other people who wanna be informed about it. Let me ask this question. Do you think that this also applies to a cigarette lighter? I'm sorry, whether... Do you think this... Do you think that the device that's prohibited is a cheap... You get information about a cigarette lighter, that would it apply? I don't know whether that would constitute information about explosives or not. Whoa, whoa, whoa, whoa, wait a minute. Let's look at it. To teach or to demonstrate to any person making the use of an explosive, comma, a destructive device, comma, or weapon of mass destruction. Isn't a cigarette lighter a destructive device? It can be a part of one, and if you show... No, no, not a part of one, in and of itself. That's not a destructive device? I think fire is pretty destructive. I apologize, Your Honor, I haven't looked at the definitions of destructive device because it wasn't an issue here. Oh, wait a minute, there's an issue here. An over breadth challenge is every word, every punctuation is an issue. That's how we adjudicate laws in terms of statutes. First Amendment is kinda greedy, not you, I'm just saying, but you said explosive and maybe weapons of mass destruction, then at least that kind of cabins it to... But when you said destructive device, you want everything to be covered. It seems to me, I don't see anything that excludes a cigarette lighter because it's certainly a lot of people have burned down a whole building by starting with a cigarette lighter, or matter of fact, a cigarette. Cigarette. So then if you teach someone how to... And then it says, by any means, give information, that's a speech, right? Yes, Your Honor. You agree with that? Yes. So if you gave a speech about how to do that, then if somebody in there, and you say, knowing that such person intends to use such teaching, that means if a person was sitting there with a cap that says, I'm proud to be a pyromaniac, would that be knowing that they're gonna use that to burn something? I don't think that would meet the knowing requirement. Why not? Your Honor, we explained to the courts... Explain it to me, knowing is pretty broad. For example, I see you sitting there in the audience saying, I hate the United States government. Does that mean I know that you're gonna use this device if I give a speech about it to do something? No, Your Honor, that would not meet the standard. Okay, what's the limitation in the four corners? That's something you're gonna pull out as a manual. I can only have to adjudicate what you wrote. Tell me in the four corners of B, that that's limited, because that's what an over breadth challenge is. Tell me how is it limited? Your Honor, I would point to this court's discussion of the model penal code and the standard for knowing, and it requires somebody to know to a high degree of certainty that certain events will follow, and basically... What's the high degree? That's the chilling part of it. Most people who speak and use the First Amendment, they don't know these codes. They know right and wrong in their own intent. That's the problem. This statute is like someone else's intent, but it's mine to give a speech. And now you say, well, the penal code... No, it says that... And you... Yeah, I wouldn't be afraid to give a speech to anybody about a cigarette lighter. You look at this thing, I don't know who's in there. They have a cap on... A t shirt on that said, I hate the government. Maybe that's the person who's gonna use this information to do something that... And I'm gonna be... And they said, I can see you go to court and said, you should have known. Everybody knows if you wear a t shirt like that, you hate the government, and they have a propensity to use this for that. You see, the knowing is not capping at all. You said, to a person, First Amendment would know the penal code says what about a high use? This court said in Castellanos Loya, when knowledge of an existence... Of the existence of a particular fact is an element of the offense, such knowledge is established if a person is aware of a high probability of its existence, unless he believes that it does not exist. That's from the model appeal. But that's of a fact, but this is mental, this is knowledge of mind reading. That's different. It's very hard for the government to prove, and that's why these cases don't come up that hard. Or is it? Is it hard to prove? I think that that's... I don't know. I mean, pretty much, federal government, y'all have a pretty high percentage of convictions, very high. As counsel... As a matter of fact, that's where the over breath is. Even if you exonerate it, look what you've gone through. A criminal... Because I spoke under the First Amendment, I've had to go through a trial in a federal court, and at the end you say, who I won. That's winning? Do you think you're gonna say that again if you go through that to win, to exonerate yourself from speaking, for speaking? That's the whole... These cases are... This case has never been heard before. It's an important case in terms of winning down in our First Amendment rights. I completely agree that this is an important case, and I wanna point to what this court said in Rice v. Palatin, because it's not what my friend on the other side said. What this court said in Rice was, in some contexts, intent is a requirement in order to avoid exactly the chilling effects that you've been describing. The court didn't say in every context, although my opposing counsel seems to read the case that way. The court said in some context, and it was concerned about, exactly the kinds of hypotheticals that are reached by 842 P2A, the broad distribution. When you're dealing with instruction of a particular person, knowing that person intends to commit a crime of violence, that's a narrowly tailored crime, and your instruction is integral to that crime, and that's why it falls outside of the First Amendment. That turns percentages on its head. The larger the crowds you speak, the more likely one person is gonna have an impact about something. You're speaking to 20,000 people at a college graduation, but if one person there has on something that it might indicate to you, you get on the stand and say, Well, you should have known that person there. Isn't that the person who jumped up during your speech and said something? Yeah, I agree, the government is no good. I don't like them at all. Is that enough knowledge that that person is gonna use that? And the only way to find out is to be tried, to be charged, and go to federal court, and maybe at the end, a jury might say, I'm not sure that's enough. That's the way that you prevent... People are gonna be quiet. They're gonna say the government is in control now, that they got these laws here that are so broad that I'm afraid to speak, because I don't wanna wind up being a person who gets prosecuted for something I don't have an intent, but they said I know. And I don't know whether knowing is enough, because as you stand here now, how much knowing do you have to know that you're given notice of in this statute? Again, it would have to be to a high probability. And I would again say that the should have known standard is not what Congress adopted here. Congress considered that, and the DOJ report considered the should have known standard and opted to apply something higher. They chose actual knowledge, and that's what this court explained in Custodianus Loyo requires a high probability of his distance. Not a T shirt, not some suspicion, not an anonymous tip. That's not what knowledge requires. Mr. Arthur opted not to request a jury instruction on knowledge in this case. But isn't that as it applies, then you're going into application. Man, well, it's not so bad because we really might not prosecute here, or we don't find this standard high enough. But over breath cannot be surmounted by the fact that you say, oh, here... The chilling aspect of it, and that's what it says that... If you say this, I'll let you say this, I'll shoot you in the head as long as you don't say something that makes me angry. I don't know what's gonna make... I'm just kidding. You're gonna err on... And that's the whole balance. I'm gonna err on the side of not speaking because the risk is too high for speaking, and that's the thing. What you're talking about is really... That's what really the essence of over breath is when it comes to the First Amendment, because you're afraid to speak because the gauntlet may fall on you, you know, guillotine if you will. And I don't know what that is. I'm glad that you bring us back to the over breath framework because the Supreme Court has explained that the requirement in order to overturn a statute for over breath is substantial examples of protected speech that this would reach. And Mr. Arthur simply hasn't brought those. He hasn't explained any examples of protected speech that this would actually criminalize. He's explained sort of hypotheticals that might be reached by other statutes or that might constitute aiding and abetting, but he has not brought the examples that are required before a court will take the drastic step of entirely invalidating a statute. And that's a... Why don't you put in a statute that's destructive? What's the purpose of adding destructive device? I can see explosive, things that blow up, weapons that kill people, mass destruction, those things, but what's the purpose of... Because you wanted it to be as broad as possible, right? Your honor, no, Congress opted not... Not you, I mean, not you personally. Congress chose to adopt the narrower mens rea standard because they were trying to fill a narrow gap here in the wake of the Oklahoma City bombing. To Judge Young's point, the mens rea here isn't just knowing, it's knowing of a particular criminal intent of another person, and that's what makes this speech integral to criminal conduct, and that's what brings it within the bounds of the First Amendment. It's not that it's simply knowing that you are giving this information, it's knowing you're giving this information to somebody who is going to use it to kill federal officers. That's the extremely rare circumstance that the statute reaches. It's very narrowly tailored to fill the gap where aiding and abetting might yet not be found, and that's why it complies with the First Amendment. The other point... No, go ahead. The second point that I wanted to make on the narrow taroting point is just to talk about the fact that the other crimes that often are... We think of when we think of speech integral to criminal conduct aren't categories, as Mr. Arthur claims they are in his brief. Rather, they're examples. It's not that this crime needs to entirely duplicate conspiracy or solicitation or aiding and abetting to be constitutional, it's simply of the same type. And I'll concede, as we've been discussing, that most of those crimes do have a specific intent requirement, but as this court explained in Rice, specific intent is not a universal requirement of the speech integral to criminal conduct exception. This court again said, in some context, it is, in order to avoid exactly the chilling concerns that you've been describing. But in other instances where you're dealing with one on one instruction or to a small group, which Mr. Arthur, I heard say when he was... Mr. Arthur's counsel say up here, may well all be constitutional, that's what this statute targets, and that's why it complies with the First Amendment. There are other examples of statutes that have this same lower level of mens rea. We pointed them out in our brief, including Section 231, the Arms Export Control Act, and its predecessor, the Mutual Security Act. All of those statutes have been addressed by courts and found to be constitutional, even though they contain the same mens rea that Mr. Arthur says would render all of those statutes unconstitutional. And so for these reasons, we would urge the court to affirm. And this applies whether the person does anything, doesn't have to do anything. If at the time you teach them, they have the intent to commit the crime of violence, then yes, the crime is complete at that point, whether or not they ultimately go on to commit that crime of violence. Right, and even broader, yes. They don't have to do anything. They have to be intending to commit that crime. All they have to do is listen to it. They have to know that the person intends to commit a crime of violence. Using the information that you are giving them. It's not simply that you are talking to them and they're going to commit an unrelated crime with fraud. It's that they have to be intending to use the knowledge you are giving them to commit that crime of violence. That's why it's so narrowly tailored to address this gap that Congress felt might exist in the rare circumstance that has happened now once since the statute was passed. It's interesting. It's interesting that the engineering you're using, and that the engineering you're using that you're trying to persuade this court, I guess, is saying that because the way we apply it is no problem. Because you're saying the way we apply it is that it's got to be, first of all, one person, one on one, which I don't think it says that at all, but it's one on one, and then it's a question of whether or not you know what they intend to do, which would be tailor made to this case here, where you send somebody in and receive them and do those things. But you can't use as applied... It's not an applied case, but you use it as a defense in that sense to get away from. It's so amorphous though. The question is, does it chill in that? In other words, it's like being a king. It's a good king or a bad king. No, we don't want any king, good or bad. So the point is about the statute, if it's chilling, even though you're gonna use it in a narrow enforcement way, does not change the breadth of this chilling effect of the statute itself. That's what I'm talking about. I know exactly what you're saying, that, well, no, we make sure the CIA is there and the person says, yeah, that's what I'm gonna do. That's fine. That's why he's not making it up as applied challenge. What he's talking about is much broader than that. You're saying we're gonna be good law enforcement people, and believe me, if we prosecute you, we're gonna have a mountain of evidence that the person, that you did that, but along the way, you have cut off other people saying, I can't afford to go through the gauntlet of what it... The price that I may have to pay for speaking. And lastly, I'll let you finish up, please, the time is up, but my beginning question, do you think it applies to a cigarette lighter? Your Honor, we'd be happy to submit supplemental briefing on the definition of destructive device. I simply am not familiar with the scope of that term within the federal statutes. Oh, I see, I see. So, okay. No, you don't need a 28 J. I just think the answer is that it doesn't. It says exactly what it says, destructive device. And Your Honor, again, this is why it's important that the overbreath claimant needs to bring realistic examples of overbreath, and those were not the examples that he brought. He has not challenged the destructive device language as overbroad. His knowledge... No, he's challenged the whole statute. He's challenged the mens rea requirement, Your Honor. Right. And we've explained why the mens rea requirement does not render it overbroad. Okay. Go ahead. Let me just make sure that I've hit all of the points that I wanna make. I'm happy to... Yes, we're happy to rest on our briefs for the sentencing arguments unless the court has any question about the sentencing enhancement as it was applied here. No. Mr. Minton. Thank you. Thank you very much. Thank you so much. Mr. DeSimone, you have the last word on this today. Thank you. May it please the court. The government says it will only apply this narrowly to when it's teaching to one person. The Supreme Court rejected that exact argument in Stevens, where the government said, look, we're only gonna apply this very narrowly to animal crushing videos. The Supreme Court said, look, look at the language of the statute. It applies far more broadly than that. The government says that Rice held only that intent is required in some context. What I think you can glean from Rice, which is a long complicated decision, but I think they're talking about in civil cases, right? This is a civil case. They're saying, no, we have to import the higher mens rea of the criminal so that we don't chill speech. Now, maybe there are some civil cases where you wouldn't need to do that, but certainly not in a criminal case where you're trying to take somebody's liberty. This is a 20 year crime. And I just have to quibble, as a defense attorney, the government's assertion that knowledge is very hard to prove, just... It's not been my experience in 20 years. So knowledge is extremely easy to prove, far easier than criminal intent. And if you just look at pages 17 to 23 of my reply brief, you'll see a number of cases. There's case law from this court that says, if it's too suspicious, then it's knowledge, right? But knowledge has a definition, right? Like it means that... A high probability. The person was conscious, aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident. Correct. Correct. You're right. You're right. But on the ground, it's inferred from circumstantial evidence, right? And there is a gulf between knowledge and intent. The sky has not fallen in the quarter century that this law has been in existence, despite the fact that it has never been enforced. Meanwhile, the government has successfully prosecuted a lot of these cases under subsection A, which has the requisite intent requirement. In addition, the government has all sorts of options in the federal code that it discussed in its report, discussed here today. In short, the government doesn't need this law. But if the law stands, it will chill an enormous amount of valuable speech. And the most important thing is that this speech is largely intended to keep people who work with this stuff safe. And I'm sorry, but there is no way that this law... It's just not written to apply to teaching only one person. Maybe that would have been the law that they should have written. They didn't write that law. It is far too broad. This court should strike down that law, vacate the remaining counts, and grant a new trial, I suppose. I'm happy to answer any other questions. All right. I think we're good now. Thank you. I know, Mr. DeSimone, that you were court assigned. I know you're a federal public defender, and we appreciate you to take this assignment on behalf of the Fourth Circuit. I want to thank you. I appreciate you and all the lawyers who take on these cases and help us try to resolve them. And also, I know Mr. Mintz is an April representation of the United States. With that, I'm gonna ask the clerk to, I guess, adjourn, I guess you will, the court for till tomorrow morning, I should say. And then we'll come down and be in council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, G. Steven Agee, Roderick Charles Young